```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION

J&J SPORTS PRODUCTIONS, INC.,   §
as Broadcast Licensee of the    §
February 16, 2008 "The Epic     §
Battle Continues": Pavlik/      §
Tylor Event,                    §
                                §
              Plaintiff,         §
                                §
VS.                             §   CIVIL ACTION H-11-0574
                                §
(1) FRANCISCO RAMIRO ORELLANA,  §
Individually and d/b/a EL FERRI §
a/k/a EL FERRI MEXICAN          §
RESTAURANT & BAR, and           §
                                §
(2) AGUSTINA MONTANO PORTILLO   §
a/k/a AUGUSTINA MONTANO         §
PORTILLO, Individually and      §
d/b/a EL FERRI a/k/a EL FERRI   §
MEXICAN RESTAURANT & BAR,       §
                                §
              Defendants.        §
```

**OPINION AND ORDER OF SUMMARY JUDGMENT**

The above referenced action, grounded in the Federal Communications Act of 1934, as amended by the Federal Cable Communications Act of 1984, 47 U.S.C. §§ 553 and 605,[1] alleges that

---

[1] Section 553 provides in relevant part, "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

Section 605(a) states in relevant part, "[N]o person receiving . . . any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . to any person other than the addressee, his agent, or attorney . . . .

Defendants Francisco Ramiro Orellana, Individually and d/b/a El Ferri a/k/a El Ferri Mexican Restaurant & Bar, and Agustina Montano Portillo a/k/a Augustina Montano Portillo, Individually and d/b/a El Ferri a/k/a El Ferri Mexican Restaurant & Bar, illegally and willfully intercepted and/or received the interstate communication of a closed circuit February 16, 2008 fight, "The Epic Battle

---

No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."
     As noted by the district court in *J&J Sports Productions, Inc. v. Live Oak County Post No. 6119 Veterans of Foreign Wars*, Civ. No. C-08-270), 2009 WL 483157, *4 n.3 (S.D. Tex. Feb. 14, 2009),

> "[I]t is not clear that damages resulting from one unlawful act of cable or satellite 'piracy' are recoverable under both § 553 and  605." *Innovative Sports Mktg. v. Medeles*, C.A. No. H-07-3281, 2008 U.S. Dist. LEXIS 31409, at *3-4, 2009 WL 1758886 (S.D. Tex. Apr. 15, 2008).  "The Fifth Circuit has not explicitly addressed whether a plaintiff can recover under both sections for the same action." *Id*. at *4 (citing *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001)(recognizing the disagreement on the issue of double recovery and citing *United States v. Norris*, 88 F.3d 462, 466 (7th Cir. 1996) for the proposition that a plaintiff may not recover under both sections). "However, even the courts that have held that liability under § 553 and § 605 overlap often have chosen to impose liability under § 605 and not § 553." *Innovative Sports Mktg.*, 2008 U.S. Dist. LEXIS 31409, at *4 (citing *Ent'mt by J&J v. Al-Waha Enters.*, 219 F. Supp. 2d 769 (S.D. Tex. 2002)(explaining that courts generally award damages under section 605 because it is more generous to plaintiffs)).

Continues": Kelly Pavlik v. Jermain Taylor, II, WBC Super Middleweight Championship Fight Program (the "Event"), and exhibited the Event in Defendants' establishment, El Ferri a/k/a El Ferri Mexican Restaurant & Bar (the "Establishment" or "restaurant"), thereby misappropriating Plaintiff J&J Sports Productions, Inc.'s licensed exhibition of the program and infringing upon Plaintiff J&J Productions, Inc.'s exclusive rights to sub-license that telecast.  Pending before the Court is Plaintiff J&J Sports Productions, Inc.'s motion to for summary judgment (instrument #12).

## Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 317, 323 (1986). The substantive law governing the claims identifies the essential elements and thus indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not

have to support its motion with evidence negating the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant succeeds, the non-movant must come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993). Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006). Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007). Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). Nor are pleadings competent summary judgment evidence. *Little,* 37 F.3d at 1075; *Wallace v. Texas Tech. U.*, 80 F.3d 1042, 1045 (5th Cir. 1996).

**Plaintiff's Motion for Summary Judgment (#12)**

Plaintiff has cited numerous cases and presented substantial evidence in support of all elements of its claims against Defendants for the unauthorized interception of the closed-circuit telecast and broadcast of the signal of the Event in their Establishment on February 16, 2008 in violation of the Federal Communications Act, a strict liability statute. The attached documentary evidence includes the following: a copy of the License Agreement between the promoter of the Event and Plaintiff that gave Plaintiff the exclusive right to license the exhibition of the Event to commercial establishments; an affidavit from Maria Gonzales, Plaintiff's Auditor, "hired for the specific purpose of finding violators of the anti-piracy statute," and an eyewitness to the exhibition of the Event in Defendants' restaurant on the February 16, 2008; Defendants Francisco Ramiro Orellana and Agustina Montanao's responses to Plaintiff's request for admissions; and an affidavit from Thomas P. Riley, a representative and custodian of records of Plaintiff, regarding damages.

Because the actual amount of damages is difficult to prove, Plaintiff elects to seek statutory damages of $10,000.00 pursuant

to the Communications Act, 47 U.S.C. § 605(e)(3)(C)(i)(II).[2]

As a result of this piracy, Plaintiff, which paid substantial fees for the right to sublicense the broadcast to commercial establishments, asserts and provides evidence that in addition to lost revenue, it deserves further compensation because it has lost, and will continue to lose, as its customers legitimate commercial establishments which must compete with unauthorized commercial establishments like Defendants' establishment that offer the broadcast to their patrons for a lesser amount than the authorized establishments or for no fee.  Plaintiff asserts, with documentary support, that Defendants' conduct has the potential to erode the base of Plaintiff's customers.  Plaintiff has also suffered damage to its goodwill and reputation and the loss of its right and ability to control and receive fees for the transmission of the Event.

Furthermore, with citation to authority, Plaintiff requests additional damages for a "willful" act performed by Defendants for direct or indirect commercial advantage or private financial gain under 47 U.S.C. § 605(e)(3)(C)(ii) in the amount of $100,000.00. *See ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985), *citing TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985).  The fact that the violation was willful is established by

---

[2] This amount falls within the range of the statute, which permits recovery from $1000.00 up to $10,00.00 for each violation.  47 U.S.C. § 605(e)(3)(C)(i)(II).

the fact that to receive the unauthorized broadcast of the Event, Defendants had to commit a wrongful act to decode the scrambled signals, such as using an unauthorized decoder or satellite access card or moving an authorized decoder or satellite card from its authorized location to the Establishment or illegally altering the cable or satellite service to bring the signal into the Establishment.  Ex. A, Affid. of Thomas P. Riley, at ¶¶ 7, 10. Plaintiff also submits evidence that Defendants exhibited the Event for financial gain.

In addition, pointing out that an award of reasonable attorney's fees and costs is mandatory under 47 U.S.C. §§ 553(c)(2)(C) and 605(e)(3)(B)(iii), providing a supporting affidavit from David M. Diaz (Exhibit B), and citing authority recognizing a one-third contingent fees as reasonable for the prosecution of anti-piracy cases, Plaintiff seeks an award of one-third (33 1/3%) of the actual and additional damages for prosecution of this action through final judgment.  Alternatively, Plaintiff requests an award based on a lodestar calculation for its counsel's work for six hours at an hourly rate of $250.00, for a total of $1500.00.

Finally Plaintiff asks the Court to permanently enjoin Defendants from ever intercepting or broadcasting an unauthorized program in violation of the Communications Act, 47 U.S. C. § 605(e)(3)(B)(i).

Initially, in response, Defendants conclusorily asserted, with a supporting affidavit from Defendant Agustino Montano Portillo ("Portillo"), that "[D]efendants never illegally intercepted the closed-circuit telecast of the April 26, 2008 'Latin Fury': Julio Cesar Chavez, Jr. v. Tobia Guiuseppe Loriga WBC Continental Americas Light Middleweight Championship Fight Program." #13 at p.2.

In reply (#14), *inter alia* Plaintiff objected that this allegation is not only conclusory, but even more, that the date and the program cited in the affidavit were not for the program or date targeted in Plaintiff's complaint and therefore incompetent to preclude summary judgment.

Subsequently Portillo, stating that she filed the wrong affidavit from another case, submitted an unopposed motion for leave to file an amended affidavit (#18), which the Court granted (#21). Portillo then filed a one-page affidavit (#22) stating in relevant part,

> I was present at the El Ferri Mexican Restaurant and Bar on February 16, 2008, and contrary to the affidavit of Plaintiff, we did not broadcast the Pavlik/Taylor fight on that date, nor did we have the capability to broadcast the fight. We only had Karoke [*sic*] at the restaurant that evening and did not illegally intercept the communication as alleged by the plaintiff.

In reply (#23), Plaintiff notes Defendants' failure to cite any authority or to respond to the substance of Plaintiff's claims.

Insisting that even if everything in the amended affidavit is

-8-

true, it does not refute that the Event went on in Defendants' restaurant' Plaintiff points out Portillo's affidavit fails to state that she was there during the time the Event was on and thus the affidavit does not refute that the Event was exhibited at the restaurant that night; "evening" is not night. Moreover the affidavit does not say that she was in the room where the televisions were on, as opposed to the kitchen or in an office, nor does she swear that she continually observed the television so that she could testify that the Event was not on those televisions at 10:52 p.m. on February 16, 2008, as Plaintiff's Auditor Gonzales swears. Summary judgment affidavits must provide clear and direct evidence. *Le v. Cheesecake Factory Rests., Inc.*, Civ. A. No. H-03-5713, 2005 U.S. Dist. LEXIS 42881, *32 (S.D. Tex. Sept. 14, 2005)("affidavits must contain a clear explication of factual information that would be admissible at trial").

Furthermore, Portillo's affidavit does not refute Plaintiff's claim that Defendants violated of the Communications Act by simply stating, "We . . . did not illegally intercept the communication as alleged by the Plaintiff." Plaintiff's complaint (#1 at ¶¶ 12 and 16) was not limited to interception of the signal:

> On February 16, 2008 Defendants willfully intercepted and/or received the interstate communication of the Event. In the alternative, Defendants assisted in the receipt of the interstate communication of the Event. . . . Defendants were not authorized to intercept, receive or transmit the communication of the Event or to assist in such action is any form at any time.

Interception is only one method of obtaining the Event unlawfully. *See Joe Hand Promotions v. Malespin*, 2001 U.S. Dist. LEXIS 2037, *9-10 (S.D.N.Y. Feb. 27, 2001)("The respective defendants elected not to enter into contract with plaintiff to obtain the transmission of the Program.  Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial establishment, would be:  (a) using an illegal descrambler in a satellite receiver; (b) using a pirate cable box; (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to their commercial establishments.  The Court finds that employing any one of these means to defraud plaintiff would be evidence of wilfulness and would support an award of enhanced damages.").  Any unauthorized showing of the Event is a violation of the Communications Act.  *See, e.g., Nat'l Satellite Sports, Inc. v. Garcia*, 2003 U.S. Dist. LEXIS 10315, *3 n.2 (N.D. Tex. June 18, 2003)("A tape-delayed broadcast without authorization is still a violation of the FCA.").  The FCA is a strict liability statute, so a plaintiff, as exclusive licensee, need only show that the Event was shown in the defendant's establishment without the plaintiff's authorization.  *Joe Hand Promotions, Inc. v. Lee*, 2012 U.S. Dist. LEXIS 73094, *7-8 (S.D. Tex. May 24, 2012).

In sum, Defendants fail to meet their burden to show a genuine issue of material fact because the single affidavit in opposition does not contradict Plaintiff's proof. *See, e.g., Bayou West Condos. Homeowners Ass'n v. Royal Surplus Lines Ins. Co.*, 415 F. Supp. 2d 684, 686 (S.D. Tex. 2006)(affidavit in opposition to summary judgment must designate specific facts that show there is a genuine issue of material fact for trial).

Portillo's affidavit further assert that Defendants did not "have the capability to broadcast the fight." Defendants did not plead the affirmative defense of impossibility and thus have waived it and therefore cannot raise it now.[3] Moreover, Portillo failed to designate an expert on matters such as electrical wiring, satellite reception, and cable/satellite piracy and did not provide any basis in her knowledge, education, experience or ability to provide expert testimony on these types of matters. Thus her testimony is unreliable and not competent to be sufficient summary

---

[3] The Court agrees. *See, e.g., In re Capco Energy, Inc.*, Bankr. No. 08-32282, Adversary No. 10-3349. 2012 WL 253140 (Bkrtcy. S.D. Tex. Jan. 25, 2012)("[I]mpossibility and ambiguity are affirmative defenses and must be specifically pleaded under F.R. Civ. P. 8(c). Although the Fifth Circuit has directed courts not to 'exalt[] form over substance' when determining whether an affirmative defense has been pleaded, *Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319, 327 n.8 (5th Cir. 2001), the affirmative defense must still be apparent from the pleadings."); *see also Stoeffels v. SBC Communications, Inc.*, Civ. A. No. 05-CV-0233-WWJ, 2008 WL 4391396, *1 (W.D. Tex. Sept. 22, 2008)(affirmative defenses musts be pleaded with sufficient specificity or factual particularity to give the plaintiff fair notice of the defense).

judgment evidence. Even if she were deemed to be an expert on these matters, her affidavit fails to clarify when she inspected the premises. She has not even established that she was present at the Establishment the night of February 16, 2009, no less at the time of the Event.

Plaintiff's summary judgment evidence shows that the events at issue were all electronically scrambled. #12-1 Ex. A (Riley Affid.). Thus illegal activity was necessary to divert and broadcast the event at Defendants' restaurant. *J&J Sports Productions, Inc. v. Garcia*, 2009 U.S. Dist. LEXIS 72233, *11-12 (S.D. Tex. Aug. 14, 2009). Plaintiff's evidence also establishes that the Event was broadcast at that restaurant. #12-1, Ex. A-2 (Affid. of Maria Gonzales). For such a broadcast, Defendants had to use an unauthorized decoder or "black box" to unscramble the signal in a satellite receiver, use an illegal pirate cable box, to falsely represent that the commercial establishment is a residential establishment in order to obtain the signal at the lower residential rate, to use an illegal "splice" from a residential location adjacent to the commercial establishment, to order the Event for a residence, and move the residential cable box or satellite receiver and dish to their commercial establishment. *See Garden City Boxing Club, Inc. v. Guzman*, 2005 U.S. Dist. LEXIS 7954, at *9 (S.D.N.Y. Apr. 26, 2005); *J&J Sports Productions, Inc. v. Kosoria*, 2007 U.S. Dist. LEXIS 40246, *3 (S.D.N.Y. May 31,

2007); *Joe Hand Promotions, Inc. v. Malespin*. 2001 U.S. Dist. LEXIS 2037, *9-10 (S.D.N.Y. Feb. 27, 2001). In sum, despite the Court having granted Defendants an opportunity to amend and to submit whatever evidence they wanted, Portillo's affidavit, Defendants' sole summary judgment evidence, does not address the use of illegal splicing from a residential location nor negate the use of a portable satellite dish on the night of the events. Such equipment is affordable and readily available. #23, Ex. C. Thus Plaintiff insists it is entitled to summary judgment.

This Court agrees. Defendants have pointed out numerous deficiencies in Defendants' amended (substituted) affidavit, which accordingly fails to raise a genuine issue of material fact for trial.

Furthermore, after a careful review of Plaintiff's evidence, the Court finds that an award of $10,000 in statutory damages is appropriate.

While Plaintiff seeks an additional $100,000.00 for willful violations, the case law cited by Plaintiff suggests that a multiplier of three to eight times the amount of statutory damages is appropriate. *See, e.g., KingVision Pay-Per-View, Ltd. v. Scott E.'s Pub, Inc.*, 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001)(multipliers of three to eight times the statutory damages); *Garden City Boxing Club, Inc. v. Reyes*, No 1:05-CV-00262 (S.D. Tex. 2000)(three to seven). *See also J&J Sports Productions, Inc. v. Q*

*Café, Inc.*, Civ. A. No. 3:10-CV-02006-L, 2012 WL 216274, *2 (N.D. Tex. Jan. 25, 2012)(finding a multiplier of five reasonable in light of the urban location of the establishment and the importance of deterring future violations). After considering the matter, the Court finds a multiplier of five reasonable and thus awards $50,000.00 for willful acts.

The Court rejects Plaintiff's request for an additional $2500.00 for collection of the final judgment in the event that Plaintiff obtains a writ of execution, writ of garnishment, writ of attachment or other process. It further denies as speculative and premature Plaintiff's request for a contingent award in fees in the event that post-trial, pre-appeal and appellate services are required. Plaintiff may apply for such an award when such fees are incurred.

As for attorney's fees, rather than a one-third contingency fee, the Court finds that Plaintiff should recover a fee based on the lodestar, i.e., hours expended and a reasonable hourly rate. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Guerrero*, Civ. A. No. 3:08-CV-1970-G (BF), 2009 WL 1973285, *5 (N.D. Tex. July 7, 2009). Based on Plaintiff's undisputed evidence (affidavit of David M. Diaz, Ex. B), for six hours of services at the firm's hourly rate of $250.00, the Court awards Plaintiff $1500.00 in reasonable attorney's fees.

The statute permits issuance of a permanent injunction when

-14-

liability under the statute has been established "on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)(1)." 47 U.S. 605(e)(3)(B)(i); *Kingvision Pay-Per-View, Ltd. v. Guerrero*, Civ. A. No. 3:08-CV-1970-G (BF), 2009 WL 1973285, *5 (N.D. Tex. July 7, 2009). The Court finds Plaintiff's request here to be reasonable and grants it.

Accordingly, to the extent indicated above, the Court

ORDERS that Plaintiff's motion for summary judgment is GRANTED. The Final Judgment will issue by separate order.

**SIGNED** at Houston, Texas, this 2nd day of August, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE